# EMPLOYMENT AGREEMENT

This Employment Agreement (the "Agreement") is entered into as of the 30th day of July, 2012 (the "Effective Date"), by and between **POLIZZI FINANCIAL SERVICES, LLC**, a Texas limited liability company (the "Company") and **JUI-MING YEI**, an individual residing in the State of Texas (the "Employee"). The Company and Employee are sometimes referred to herein each as a "Party" or collectively, the "Parties".

WHEREAS, the Company is in need of assistance in the area of certified public accounting professional services; and

WHEREAS, Employee has agreed to perform work for the Company in certified public accounting professional services and any and all other work performed or requested on behalf of Company during the scope of Employee's tenure with Company;

NOW, THEREFORE, in exchange for the promise and covenants contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound, the Parties hereby agree as follows:

**1.     Employee's Services.** Employee shall be available and shall provide to the Company professional services in the area of accounting (the "Accounting Services") as needed and requested.

**2.     Consideration**; **Rate.** In consideration of the Accounting Services to be performed by Employee under this Agreement, the Company will pay the Employee a salary of Sixty-Five Thousand Dollars ($65,000) per annum to be paid twice monthly; and other bonuses and benefits disclosed in writing.

**3.     Confidentiality.** By virtue of Employee's relationship with the Company, Employee has obtained or has had access to the Company's and/or its affiliates' Confidential Information. "Confidential Information" means any and all proprietary information relating and/or belonging to the Company or any of its affiliates, whether in oral, written, graphic or machine-readable form, including without limitation: know-how, trade secrets, business methods and practices, formulas and processes; techniques; security measures; price lists; customer lists; current and/or prospective business relationships and referral sources; policy, operational and business decisions; inventions, improvements, concepts and ideas; business plans and proposals; technical data, research reports, designs and specifications; new product and service developments; software developed by or for the Company or licensed to or otherwise acquired by the Company (including object code and source code and related notes and documentation), comparative analyses of competitive products, services and operating procedures; and other information, data and documents now existing or later acquired by the Company, regardless of whether any of such information, data or documents qualify as "trade secrets" under applicable federal or state law.  Employee specifically acknowledges that the lists of the Company's customers and suppliers, as they exist, from time to time, are valuable, special and unique assets to the Company.  As used herein, "affiliate" means any person or entity directly or indirectly controlling or having the power to control, or controlled by or being under common control with

INITIALS

another person or entity. For this purpose, "control" means the direct or indirect possession of power to direct or cause the direction of the management or policies of such party, whether through ownership or stock or other securities, by contract or otherwise. Ownership of more than fifty percent (50%) of the beneficial interest of an entity shall be conclusive evidence that control exists.

**4.     Non-Disclosure.** Employee agrees that, except as expressly authorized by the Company, Employee will not at any time (during the term of this Agreement or at any time thereafter) disclose to any person or use any Confidential Information whatsoever for any purposes whatsoever, or permit any person whatsoever to examine and/or make copies of materials in any media tangible or otherwise, embodying any Confidential Information prepared by Employee or that comes into Employee's possession or under Employee's control by reason of Employee's service to the Company or by reason of any services Employee has performed or may in the future perform for the Company that contain or are derived from Confidential Information. Employee further agrees that, while providing services to the Company, no Confidential Information shall be removed from the Company's business premises without prior written consent of the Company. Additionally, Employee agrees that Employee shall treat as Confidential Information any and all information regarding or received from third parties by the Company either previously or at any time during or after Employee's services to the Company and that the Company is obligated not to disclose or use. Employee shall not, at any time while providing services to the Company or at any time thereafter, improperly use or disclose any proprietary information or trade secrets of any former or concurrent employer or any other third party. Upon termination of this Agreement, the Employee shall immediately surrender to the Company all papers, documents, writings and other property (including computer files, disks, *etc.*) produced by him/her or coming into his/her possession by or through his/her engagement as an employee hereunder and relating to the Confidential Information, which is not known to the general public, and the Employee agrees that all such materials will at all times remain the property of the Company.

**5.     Restrictive Covenants.** During the Employee's association with the Company as an employee, the Employee has and will become familiar with the nature of the Company's business and with its special techniques, procedures and pricing methods and its customer relationships. In addition to its promise to provide the Employee with Confidential Information, the Company also promises to provide the Employee with the opportunity to develop goodwill and establish rapport with its customers. In exchange for these promises, and all other consideration provided pursuant to this Agreement, to which these promises are ancillary, and in order for the Company to protect such Confidential Information and relationships to which the Employee is promised access, the Employee promises that for a period of five (5) years from the termination of this Agreement:

>     (a)     The Employee shall not, directly or indirectly, for his/her own account or for the account of others, act as an officer, director, stockholder, owner, partner, employee, promoter, or in some similar capacity, engage in, or assist any person, entity, or business engaged in, any business that provides products or services competitive with the products or services offered by the Company which is located within fifty (50) miles of any Company office location.

INITIALS

(b) The Employee shall not, directly or indirectly, solicit the business of any customers with whom the Employee had contact or communication during the five (5) years preceding the termination of this Agreement, if such contact or communication is with a view to, or for the purpose of, selling, offering for sale, influencing the purchase of, or otherwise providing any products or services competitive with those offered by Company prior to the effective date of the termination of this Agreement.

(c) The Employee shall not, directly or indirectly, communicate, attempt to communicate with, accept business from, or service the business of any customers or potential customers with whom the Employee had contact or communications during the five (5) years preceding the termination of this Agreement, if such contact or communication is with a view to, or for the purpose of, selling, offering for sale, influencing the purchase of, or otherwise providing any products or services competitive with those offered by Company prior to the effective date of the termination of this Agreement.

(d) The Employee shall not, directly or indirectly, solicit, induce, or attempt to induce any employee of the Company who worked for the Company during the five (5) year period preceding the termination of this Agreement, to leave the Company's employ to work for a competitor of the Company in the same or similar capacity as the employee worked for the Company during the five (5) year period preceding the termination of this Agreement.

Should the Employee breach or violate this Agreement, the five (5) year period of the Employee's obligations specified will be extended by the period of time for which the Employee was in breach or violation so that the Company is provided with the benefit of the full five (5) year period.

The restrictions, covenants and agreements contained in this Agreement will each be construed as independent of any other provision contained in this Agreement, and the existence of any claim or cause of action by the Employee against the Company, whether predicated on this Agreement or otherwise, will not constitute a defense to the enforcement by the Company of such restrictions, covenants and agreements. Further, the Employee and the Company agree that this Agreement will remain in full force and effect regardless of whether the Employee or the Company terminates this Agreement.

If a court of competent jurisdiction should declare the restrictions, covenants or agreements under this Section 5 unenforceable, in whole or in part, due to any unreasonable duration or otherwise, then the Company and the Employee acknowledge and agree that such a court of law or equity shall have the express authority of the Parties to this Agreement to reform such restrictions, covenants and agreements to a reasonable restriction and/or to grant the Company any and all other relief, at law or in equity, reasonably necessary to protect the interests of the Company. The Employee expressly covenants and acknowledges that he/she considers these restrictive covenants reasonable.

Though the Company has made its best efforts to create a restriction as narrow as possible, the Employee understands and agrees that one of the purposes of this Agreement is to

INITIALS _____

protect the Confidential Information and goodwill described above. Under any and all circumstances, the Employee's use of the Company's Confidential Information to compete against the Company is prohibited by this Agreement, and the Employee agrees with that prohibition.

**6.     Inventions Retained and Licensed.** Employee represents and warrants that Employee has disclosed to the Company all inventions, original works of authorship, developments, improvements, and trade secrets which were conceived of, reduced to practice, created or otherwise developed prior to Employee's engagement with the Company, which belong to Employee, which relate to Employee's products or services, and which are not assigned to the Company hereunder. If in the course of Employee's provision of services to the Company, Employee incorporates into a product or service of the Company any of the foregoing, Employee hereby grants to the Company a nonexclusive, royalty-free, irrevocable, perpetual, worldwide license to make, have made, modify, use, sublicense and sell same as part of or in connection with such product or service.

**7.     Work Product.** Employee agrees that, during his/her provision of services to the Company:

A.     Employee will disclose promptly and fully to the Company all works of authorship, ideas, inventions, discoveries, improvements, designs, processes, software, or any improvements, enhancements, or documentation of or to the same that Employee makes, works on, conceives, or reduces to practice, individually or jointly with others, in the course of Employee's provision of services to the Company or with the use of the Company's time, materials or facilities, in any way related or pertaining to or connected with the present or anticipated business, products or services of the Company or which results from or is suggested by any work Employee may do for the Company and whether produced during normal business hours or on personal time (collectively the "Work Product");

B.     Employee shall make and maintain adequate and current written records and evidence of all Work Product, including drawings, work papers, graphs, computer code, documentation, records and any other document which shall be and remain the property of the Company, and which shall be immediately surrendered to the Company upon termination of this Agreement; and

C.     Employee hereby waives, and further agrees not to assert, any moral rights in or to the Work Product, including, but not limited to, rights to attribution and identification of authorship, rights to approval of modifications or limitations on subsequent modifications, and rights to restrict, cause or suppress publication or distribution of the Work Product.

**8.     Enforcement.** The breach or threatened breach by Employee of any of the provisions of this Agreement shall entitle the Company to permanent injunctive and other equitable relief in order to prevent or restrain any such breach or threatened breach by Employee or Employee's affiliates, agents, representatives, servants, employees, or any and all persons or entities directly or indirectly acting for or with Employee. The rights and remedies of the Company under this Agreement shall be in addition to and not in limitation of any of the rights, remedies, and monetary or other damages or redress available to it at law or equity, including, without

4

limitation, the recovery of money damages, attorneys' fees, and costs. If a bond is required, the Parties agree that a bond not to exceed $1,000 shall be adequate in all respect to protect the interests of the Parties.

**9.** **Remedies.** If any legal action or other proceeding is brought for the enforcement of this Agreement, or because of an alleged dispute, breach, default or misrepresentation in connection with any of the provisions of this Agreement, the successful or prevailing Party or Parties shall be entitled to recover reasonable attorneys' fees and other costs incurred in that action or proceeding in addition to any other relief to which it or she may be entitled at law or equity.

**10.** **Term.** This Agreement shall commence on the Effective Date and shall continue for a period of five (5) years unless earlier terminated upon thirty (30) days prior written notice from either Party to the other Party for any reason or no reason whatsoever.

**11.** **Employee's Licenses.** Employee represents and warrants that if Employee is licensed to perform the Accounting Services enumerated herein and covenants that Employee shall maintain such licenses, permits and registrations necessary to continue to perform the Accounting Services hereunder.

**12.** **Miscellaneous.** All work will be done in a good and workmanlike manner in accordance with applicable standards of the profession and all services are subject to final approval by a representative of the Company prior to payment. Employee shall not defame the Company or its affiliates, subsidiaries or any of its Clients at any time whatsoever. Breech of this clause will result in immediate termination of this Agreement.

**13.** **Representations and Warranties.** Employee will make no representations, warranties or commitments binding the Company without the Company's prior consent.

**14.** **Legal Right.** Employee covenants and warrants that he has the unlimited legal right to enter into this Agreement and to perform in accordance with its terms without violating the rights of others or any applicable law and that he has not and shall not become a party to any other agreement of any kind which conflicts with this Agreement. Employee shall indemnify and hold harmless the Company from any and all damages, claims and expenses arising out of or resulting from any claim that this Agreement violates any such agreements. Breach of this warranty shall operate to terminate this Agreement automatically without notice and to terminate all obligations of the Company to pay any amounts which remain unpaid under this Agreement.

**15.** **Notices.** Any notice provided for in this Agreement shall be in writing and shall be either personally delivered, or mailed first class mail (postage prepaid) or sent by reputable overnight courier service (charges prepaid) or sent by facsimile transmission to the Parties at the address set forth below, or at such address or to the attention of such other person as either Party has specified by prior written notice to the other Party. Notices shall be deemed to have been given hereunder when delivered personally, three (3) days after deposit in the U.S. mail, one (1) day after deposit with a reputable overnight courier service (charges prepaid) and upon machine generated acknowledgment when sent by facsimile.

INITIALS

**16. Third Parties.** Nothing contained herein, express or implied, is intended to confer upon any person, other than the Parties hereto and their permitted successors and assigns, any rights or remedies under or by reason of this Agreement.

**17. Amendment and Waiver.** Except as otherwise provided herein, no modification, amendment or waiver of any provision of this Agreement shall be effective against either Party unless such modification, amendment or waiver is approved in writing by each Party hereto. The failure of any Party to enforce any of the provisions of this Agreement shall in no way be construed as a waiver of such provisions and shall not affect the right of such Party thereafter to enforce each and every provision of this Agreement in accordance with its terms. The addition of any person as a party to this Agreement shall not constitute a modification or amendment to any provision of this Agreement.

**18. Assignment.** Neither this Agreement nor any rights or duties hereunder may be assigned by the Employee without the prior written consent of the Company, which may be withheld in its sole discretion. The Company shall have the right at any time to assign this Agreement to its successors and assigns; provided, however, that the assignee or transferee expressly assumes all of the obligations, duties and liabilities of the Company set forth in this Agreement.

**19. Severability.** Whenever possible, each provision of this Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be invalid, illegal or unenforceable in any respect under any applicable law or rule in any jurisdiction, such invalidity, illegality or unenforceability shall not affect the validity, legality or enforceability of any other provision of this Agreement in such jurisdiction or affect the validity, legality or enforceability of any provision in any other jurisdiction, but this Agreement shall be reformed, construed and enforced in such jurisdiction as if such invalid, illegal or unenforceable provision had never been contained herein.

**20. Entire Agreement.** Except as otherwise expressly set forth herein, this Agreement embodies the complete agreement and understanding among the Parties hereto with respect to the subject matter hereof and supersedes and preempts any prior understandings, agreements or representations by or among the Parties, written or oral, which may have related to the subject matter hereof in any way.

**21. Counterparts.** This Agreement may be executed in separate counterparts (including by manual telecopied signature pages or by email in portable document format ("PDF")), each of which shall be an original and all of which taken together shall constitute one and the same agreement. This Agreement, the agreements referred to herein, and each other agreement or instrument entered into in connection herewith or therewith or contemplated hereby or thereby, and any amendments hereto or thereto, to the extent signed and delivered by means of a facsimile machine or by email in PDF, will be treated in all manner and respects as an original agreement or instrument and will be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person. At the request of any Party hereto or to any such agreement or instrument, each other Party hereto or thereto will re-execute original forms thereof and deliver them to the other Party. No Party hereto or to any such agreement or instrument will raise the use of a facsimile machine or by email in PDF to deliver a signature or

INITIALS

the fact that any signature or agreement or instrument was transmitted or communicated through the use of a facsimile machine or by email in PDF as a defense to the formation or enforceability of a contract and each such Party forever waives any such defense.

**22.     Descriptive Headings.**  The descriptive headings of this Agreement are inserted for convenience only and do not constitute a part of this Agreement.

**23.     Governing Law.**  All issues and questions concerning the construction, validity, interpretation and enforceability of this Agreement and the exhibits and schedules hereto shall be governed by, and construed in accordance with, the laws of the State of Texas, without giving effect to any choice of law or conflict of law rules or provisions (whether of the State of Texas or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of Texas.  Notwithstanding anything herein to the contrary, each of the Parties' rights and obligations set forth herein are subject to all requirements under laws of the State of Texas.

**24.     Consent to Jurisdiction; Venue.**  Each of the Parties hereto hereby irrevocably and unconditionally submits, for itself and its property, to the exclusive jurisdiction of any Texas state court or federal court of the United States of America sitting in Jefferson County Texas, and any appellate court from any thereof, in any action or proceeding arising out of or relating to this Agreement or the transactions contemplated hereunder or for recognition or enforcement of any judgment relating thereto, and each of the Parties hereto hereby irrevocably and unconditionally agrees that all claims in respect of any such action or proceeding may be heard and determined in any such Texas state court or, to the extent permitted by law, in any such federal court.  Each of the Parties hereto agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.  Each of the Parties hereto irrevocably and unconditionally waives, to the fullest extent it or he may legally and effectively do so, any objection that it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement or the transactions contemplated hereunder in any Texas state or federal court sitting in Jefferson County, Texas.  Each of the Parties hereto irrevocably waives, to the fullest extent permitted by law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any court.

**25.     No Strict Construction.**  The Parties hereto have participated jointly in the negotiation and drafting of this Agreement.  If an ambiguity or question of intent or interpretation arises, this Agreement will be construed as if drafted jointly by the Parties hereto, and no presumption or burden of proof will arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement.

**26.     Counsel.**  The Parties hereto each state that they have read this Agreement carefully, that they have consulted with legal counsel regarding the terms and provisions of this Agreement (or have had the opportunity to consult with legal counsel and chosen not to do so), and that they have relied solely upon their own judgment without the influence of anyone in entering into this Agreement.

**27.     Non-Disparagement**.  Employee agrees and covenants that he will not at any time make, publish or communicate to any person or entity or in any public forum any defamatory or

_____
INITIALS

disparaging remarks, comments or statements concerning the Company or any of its employees, directors, officers, and existing and prospective customers, suppliers, investors and other associated third parties. This Section 28 does not, in any way, restrict or impede Employee from exercising protected rights to the extent that such rights cannot be waived by agreement or from complying with any applicable law or regulation or a valid order of a court of competent jurisdiction or an authorized government agency, provided that such compliance does not exceed that required by the law, regulation or order. Employee shall promptly provide written notice of any such order to the Company.  If Employee breaches the terms of this Section 28, the Company shall have the option of withholding any amounts payable under the Employee Compensation as shown in Section 2 of this Agreement.

**[REMAINDER FO PAGE INTENTIONALLY LEFT BLANK.  SIGNATURE PAGE FOLLOWS.]**

_____
INITIALS

IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the Effective Date:

COMPANY:                                       EMPLOYEE:

POLIZZI FINANCIAL SERVICES, LLC

By: _____                    By: _____
Name: _____                         JU -MING YEI
Title: _____

9

INITIALS